IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 18-cv-03292-RBJ-MEH

EDMOND WALKER,

    Plaintiff,

v.

TYLER MOZATTI,

    Defendant.

---

**ORDER on CROSS-MOTIONS FOR SUMMARY JUDGMENT**

---

This matter is before the Court on the parties' cross motions for summary judgment. For the reasons set forth in this order, plaintiff's motion is denied, and defendant's motion is granted in part and denied in part.

**BACKGROUND**

Edmond Walker is an inmate in the Arkansas Valley Correctional Facility (AVCF) of the Colorado Department of Corrections, located in Ordway, Colorado. Representing himself pro se, Mr. Walker complains that in January 2017 Tyler Mozatti, a deputy in the Denver Detention Center where Mr. Walker was incarcerated at the time, used racial slurs, made death threats, and caused him to be placed in disciplinary segregation, all in retaliation for his making complaints against Mozatti and another deputy. Complaint, ECF No. 1. Mr. Walker filed a previous complaint against Deputy Mozatti (and others) that was dismissed for failure to exhaust

1

administrative remedies. No. 16-cv-02221-RBJ-MEH. After correcting his failure to exhaust administrative remedies, Mr. Walker filed the present lawsuit.

Earlier in the case defendant moved to dismiss plaintiff's claim insofar was asserted against Deputy Mazotti in his official capacity. ECF No. 17. While that motion was pending Mr. Walker filed the pending "Plaintiff Motion for Summary Judgment, in his Favor Without Delay." ECF No. 33. He later filed two "declarations" in support of his motion. ECF Nos. 34 and 38. Defendant filed a combined response and cross-motion for summary judgment. ECF No. 39. Mr. Walker has not filed a reply in support of his motion or a response, as such, to defendant's cross-motion, although he has filed two more "declarations," ECF Nos. 44 and 45, and three motions essentially asking the Court to rule on his motion. ECF Nos. ECF Nos. 40, 47 and 54. The Court, on the recommendation of Magistrate Judge Hegarty, granted defendant's motion to dismiss the official capacity claim. ECF No. 55.

## STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Because Mr. Walker represents himself, the Court construes his pleadings liberally. *United States v. Trent*, 884 F.3d 985, 993 (10th Cir. 2018).

## PENDING MOTIONS

### A. **Plaintiff's Motion.**

Plaintiff's motion essentially repeats the substance of his complaint:

Sheriff Mozatti told Walker if he continues to file grievance's [sic] on a racial discrimination complaint, he, Deputy Mozatti would place him in Disciplinary Segregation. Walker told Deputy Mozatti, he planned to pursue his grievance's [sic] [.] 20 minutes later Deputy Mozatti took Walker to Disciplinary Segregation and immediately started making death threat's [sic] the same day, these death threat's [sic] lasted for over 3 month's [sic] in Disciplinary Segregation, Walker was in fear of his life and safety.

While I will construe the motion as Mr. Walker's affidavit in support of the facts asserted, the motion does not show, or attempt to show, that there is no genuine dispute as to these facts.

Mr. Walker's first "declaration," filed approximately two and a half weeks after the motion, essentially repeats the substance of his motion, adding the date of the incident (January 18, 2017) and that Deputy Mozatti told him that "he hated my nigger ass for having him and one of his peers under investigation by Internal Affairs for racial discrimination and for filing complaints." ECF No. 34.

Mr. Walker's second "declaration," filed approximately five weeks after his motion but still before the defendant's response, repeats the same statements but starts each one with "It is a fact that." ECF No. 38. Thus, according to Mr. Walker, "It is a fact that

- "Walker filed a racial discrimination complaint against Deputy Mozatti."
- "on 1-18-17 Mozatti approached Walker on the tier around 8:00 a.m. and had an interaction with Walker."
- "20 minutes after the interaction Mozatti approached Walker again and told Walker to rap his stuff up he was going to Disciplinary Segregation."
- "Mozatti took Walker to Segregation."

3

- "on 1-19-17 Mozatti was in Walker's new unit which was Disciplinary Segregation feeding Walker breakfast."
- "this happen [sic] on numerous occasions, that Mozatti was continously [sic] around Walker knowing there was a serious complaint against him; meaning Mozatti.
- "my complaint states all genuine issue of material facts."

Despite the latter reference to "genuine issue of material facts," plaintiff again made no effort to show that the facts he declared were beyond any genuine dispute.

**B. Defendant's Response and Cross-Motion.**

In its response, ECF No. 39, filed on July 2, 2019, defendant asserts that the following facts are material and undisputed. It supports these claimed facts with evidence that I note below:

- "From November 17, 2016 through January 18, 2017 Mr. Walker was housed in Pod 2F [of Denver's Downtown Detention Center] which is a special management unit within the detention facility; Pod 2F is not a disciplinary segregation unit." [Declaration of Captain Silver Gutierrez at ECF No. 39-1.]
- "On January 18, 2017, six sheriff deputies, including Deputy Mazotti, wrote an Offense in Custody Report about Mr. Walker's behavior, which stated that he repeatedly called a fellow inmate who was acting as a tier clerk a "snitch" and encouraged other inmates to target the tier clerk as a "snitch." [*See* Ex. A, ECF No. 39-1, at ¶ 6; Exhibit 2 to Ex. A, ECF No. 39-3, Offense in Custody Report, at ¶ 1; Declaration of Captain James Johnson, ECF No. 39-5, at ¶¶ 5-6.]

- "As a result of the January 18, 2017 Offense in Custody Report, the Captain in charge of the Classification and Special Management Units at the detention center where Mr. Walker was housed instigated disciplinary action against Mr. Walker for a violation of Jail Rule 2.6, Disrupting or Interfering with the Security or the Orderly Operation of the Institution or Encouraging Others to Do So, and Jail Rule 4.11, Interfering with or Disrupting Inmate Work Detail." [Capt. Gutierrez Dec., ECF No. 39-1, at ¶7; and ECF No. 39-4.

- "Based on the serious allegations which implicated safety concerns in the Offense in Custody Report, the Captain in charge of Classification transferred Mr. Walker from Pod 2F to disciplinary segregation pod 2D on January 18, 2017, pending the outcome of the disciplinary investigation." [Capt. Gutierrez Dec., ECF No. 39-1, at ¶7; ECF No. 39-2 (referring to "Arthur Clarence Walker," an alias of Edmund Walker).

- "Deputy Mazotti had no authority to order Mr. Walker's transfer from Pod 2F to Pod 2D; Mr. Walker was transferred from Pod 2F to Pod 2D on January 18, 2017, on the authority of the Classification Captain." [Capt. Gutierrez Dec., ECF No. 39-1, at ¶8.

- "Mr. Walker's disciplinary hearing for the January 18, 2017 incident took place on January 23, 2017. After the hearing, the presiding detention center hearing officer found Mr. Walker guilty of violating Jail Rule 2.6, Disrupting or Interfering with the Security or the Orderly Operation of the Institution or Encouraging Others to Do So, for his conduct on January 18, 2017, when he repeatedly called a fellow inmate who was acting as a tier clerk a "snitch" and encouraged other inmates to target the tier clerk as a 'snitch.' The hearing officer found Mr. Walker guilty based upon the description of Mr. Walker's rules

violations in the staff reports of the six sheriff deputies who were present during all or part of the events in question. [Capt. Johnson Dec., ECF No. 39-5, at ¶ 5-6; ECF No. 39-7; ECF No. 39-8].

- "As a result of being found guilty of a jail rules violation, Mr. Walker was sentenced to 10 days corrective custody in a disciplinary segregation pod. Mr. Walker had already been placed in restrictive custody, in Pod 2D, because of the pending disciplinary investigation for five days, so he received credit for the time served and the remaining five days were suspended for a 30-day probationary period as long as Mr. Walker did not engage in any other rules violations." [Capt. Johnson Dec., ECF No. 39-5, at ¶7].

- "Mr. Walker filed a multitude of grievances during his stay at the detention facility, including a total of 49 times between January 18, 2017, and April 6, 2018, which did not correspond to his placement in disciplinary segregation." [Historic Custody by Housing Unit Report, ECF No. 39-2; Supplemental Declaration of Major Bryan Moore, ECF No. 39-9, at ¶P5-6; Supplemental Declaration of Captain Harold Minter, ECF No. 39-10, at ¶9].

- In a declaration Deputy Mazotti states that he never hindered or interfered in any way with Mr. Walker's access to the grievance system, and that he has never threatened to harm Mr. Walker in any way. ECF No. 39-11 at ¶8.

Based on those facts, defendant argues that Mr. Walker's retaliation claim fails because he was placed in disciplinary segregation for violating jail rules after a disciplinary hearing, not in retaliation for First Amendment protected conduct. ECF No. 39 at 5-7. Defendant argues that Mr. Walker has not produced any evidence to the contrary. *Id.* at 8-10. Accordingly, defendant

6

requests that the Court deny plaintiff's motion for summary judgment, grant defendant's cross-motion for summary judgment, and dismiss the case.

### C. Plaintiff's Reply/Response.

On July 8, 2019 Mr. Walker filed a motion indicating that he had not received a response to his motion and asking the Court to grant his summary judgment motion. ECF No. 40. I denied that motion and noted that a response to his motion had been filed on July 2, 2019. ECF No. 41. Defense counsel then notified plaintiff and the Court that counsel had failed to place his motion and exhibits in the mail due to a paralegal's error. ECF No. 42. The Court then granted Mr. Walker additional time, to July 31, 2019, to file his reply. ECF No. 43.

On July 17, 2019 Mr. Walker filed his "3rd Declaration in Support of Summary Judgement." ECF No. 44. It stated, incorrectly, that defendant still had not responded to his motion for summary judgment and "demand[ed] that the Court grant summary judgment in his favor and award him $500,000. *Id.* at 2.

On July 22, 2017 Mr. Walker filed his "4th Declaration of Edmund Walker for Summary Judgment and Reply." ECF No. 45. He essentially made three points. First, he asserts that defendant's motion was the same motion it made in the prior case, which was dismissed for failure to exhaust administrative remedies. *Id.* at 1. Second, he reiterates his previous statements of the facts, emphasizing that (1) he was taken to Disciplinary Segregation within 20 minutes after Deputy Mazotti threatened him with Disciplinary Segregation if he didn't back off his complaint against Mazotti and a peer for racial discrimination and for filing a civil complaint; (2) when Deputy Mazotti and another deputy took him to Disciplinary Segregation, and again the next day, Mazotti made racial slurs and threatened to kill him, e.g., by poisoning his food; and

7

(3) that making death threats in retaliation for protected conduct violates his First Amendment rights, citing *Van Deelan v. Johnson*, 497 F.3d 1157 (10th Cir. 2007).

**D. Defendant's Reply.**

Defendant notes that Mr. Walker did not respond to defendant's evidence that he was placed in Disciplinary Segregation for violation of jail rules and at the direction of supervisors, not Deputy Mazotti. ECF No. 46 at 2-3. Defendant further argued that Mr. Walker had provided no evidence that he was retaliated against for protected conduct other than his own "self-serving statements of his own beliefs," which is insufficient to avoid summary judgment (citing *Piercy v. Maketa,* 480 F.3d 1192, 1197-98 (10th Cir. 2007) and *Sartori v. Susan C. Little & Assocs., P.A.,* 571 F. App'x 677, 680 (10th Cir. 2014). *Id* at 3. Defendant notes that in his declaration he denied making threats against him. *See* ECF No. 39-11. He argues that he is entitled to qualified immunity because Mr. Walker has not established that he (Mazotti) made threats against him in violation of Mr. Walker's First Amendment rights, and even if he did, Mr. Walker has not shown that the law is clearly established that making threats, even death threats, could rise to the level of retaliation in violation of First Amendment rights. *Id.* at 5.

## ANALYSIS AND CONCLUSIONS

**A. Plaintiff's Motion for Summary Judgment.**

It is obvious that Mr. Walker's rendition of the facts is disputed. Defendant has come forward with substantial evidence creating, at a minimum, genuine issues of material fact concerning Mr. Walker's allegations. Mr. Walker, a frequent litigant, should know better than to seek, indeed demand, summary judgment in his favor. Plaintiff's motion for summary judgment must be denied.

8

**B. Defendant's Cross Motion for Summary Judgment.**

Defendant has come forward with substantial evidence, both in declarations and documents, showing that Mr. Walker was placed in disciplinary segregation for rules violations unrelated to Deputy Mazotti. Mr. Walker has not responded to that evidence. At best, taking his statements as true, he has shown that he was placed in Disciplinary Segregation in close proximity in time to when he alleges that Deputy Mazotti made threats against him. That does not create a genuine dispute as to the reason he was placed in Disciplinary Segregation.

However, that is not the end of the story. The fact that Mr. Walker was placed in Disciplinary Segregation for unrelated reasons does not eliminate the possibility that Deputy Mazotti threatened Disciplinary Segregation and physical harm if Mr. Walker did not retract grievances he had filed against Mazotti and another deputy and/or lawsuits against Mazotti. Mr. Walker has stated (over and over) that Deputy Mazotti did these things. Deputy Mazotti has denied it. Neither party has produced any other evidence, such as witness statements, that corroborates his version. I find that there is a genuine dispute of material fact as to whether such statements and threats were made.

As for qualified immunity, it should be clear to any prison official that he or she may not threaten punishment or harm to an inmate for filing, or for not retracting, grievances. Indeed, defendant's successful defense against the prior version of this suit was based on Mr. Walker's failure to exhaust his administrative remedies through the grievance process. It should be just as clear that a reasonable deputy would know that it is improper to threaten punishment or harm against an inmate for exercising his right to file or to maintain lawsuits. "It is well-settled that '[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercised

of his right of access to the courts.'" *Gee v. Pacheco,* 627 F.3d 1178, 1189 (10th Cir. 2010) (quoting *Smith v. Maschner,* 899 F.2d 949, (10th Cir. 1990)).

To constitute retaliation, an action must be of the kind that would "chill a person of ordinary firmness from continuing to engage in that activity." *Id.* (quoting *Shero v. City of Grove, Oklahoma*, 510 F.3d 1196, 1203 (10th Cir. 2007)). Threats to place an inmate in Disciplinary Segregation or to poison an inmate's food may well have such a chilling effect. *See id.* By way of comparison, in *Purkey v. Green,* 28 F. App'x 736 (10th Cir. 2001) (unpublished), the panel found plaintiff stated claim for First Amendment retaliation by alleging, among other things, the county jail officials "threaten[ed] discipline if he persisted in obtaining legal materials." *Id.* at 746. *See also Penrod v. Zavaras,* 94 F.3d 1399, 1404 (10th Cir. 1996) (finding retaliation when prison officials transferred the inmate to administrative segregation and threatened him with further retaliation if he continued complaining).

Accordingly, I am not persuaded that the defendant is entitled to qualified immunity. Whether he made such threats, of course, is another matter.

**ORDER**

1. Plaintiff's motion for summary judgment, ECF No. 33, is DENIED.
2. Defendant's cross-motion for summary judgment, ECF No. 39, is GRANTED IN PART AND DENIED IN PART. It is granted to the extent that plaintiff's claim that he was placed in Disciplinary Segregation because of his refusal to retract claims, grievances or lawsuits against Deputy Mazotti is dismissed. However, it is denied as to plaintiff's claim that he was denied constitutional rights by being threatened with Disciplinary Segregation and physical harm if he did not retract such claims, grievances or lawsuits.

3. Plaintiff's latest motion for a ruling on his motion for summary judgment, ECF No. 54, is DENIED AS MOOT.

4. The parties are directed to contact Chambers within fourteen days to schedule trial and a trial preparation conference.

5. Mr. Walker shall be served at the address in his notice of change of address, ECF No. 53.

DATED this 11th day of February, 2019.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge